# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| RAINBOW MOUNTAIN, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) ) | |
| v. | ) ) | |
| TERRY BEGEMAN, | ) | C.A. No. 2018-0403-TMR |
| Defendant/Counterclaim Plaintiff and Third Party Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| JEFFREY BEGEMAN, SUSAN BEGEMAN, MYSTIE BEGEMAN, LAURIE LARIMAR, JASON BEGEMAN, MELANIE KETCHUM, TODD BEGEMAN, BONNIE BEGEMAN, JUSTIN BEGEMAN, COREY BEGEMAN, EMILY MCGEE, CINDY DALLWIG, ROGER DALLWIG, JENNIFER RAY, JEREMY NICHILO, CARLY NICHILO, JOSHUA NICHILO, and MARK BEGEMAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) | |

## ORDER

WHEREAS, on June 4, 2018, Plaintiff Rainbow Mountain, Inc. ("RMI") filed

a Complaint for Declaratory Relief (the "Complaint");

WHEREAS, on November 9, 2018, Defendant Terry Begeman ("Terry")[1] filed Defendant's Verified Answer and Consolidated Affirmative Defense (the "Answer") and Defendant's Verified Counterclaim for Declaratory Judgment (the "Counterclaim");

WHEREAS, on January 14, 2019, Brian T.N. Jordan ("Jordan") filed a Motion to Withdraw/Stay (the "Motion to Withdraw");

WHEREAS, on January 30, 2019, Terry filed Terry Begeman's Reply to Plaintiff Counsel's Motion to Withdraw and to Plaintiff's Motion to Stay (the "Opposition");

WHEREAS, on February 8, 2019, this Court entered an Order Addressing Motion to Withdraw (the "February 8 Order");

WHEREAS, on March 8, 2019, Potter Anderson & Corroon LLP ("Potter Anderson") entered its appearance on behalf of RMI.

WHEREAS, on May 1, 2019, Jordan filed a Stipulation and [Proposed] Order Regarding Substitution of Counsel;

WHEREAS, on May 2, 2019, this Court granted the Stipulation and [Proposed] Order Regarding Substitution of Counsel;

---

[1] This order refers to the relevant individuals by first name because many of them share the same last names. I intend no familiarity or disrespect.

WHEREAS, on July 23, 2019, Terry filed Defendant Terry Begeman's Petition Based Upon His Objection to Counsel's May 01, 2019 Motion For a Stipulation and [Proposed] Order Regarding Substitution of Counsel (the "Petition") and Defendant Terry Begeman's Motion to Set Aside a Default Judgment or in the Alternative Motion to Dismiss (the "Motion to Stay");

WHEREAS, on August 30, 2019, RMI opposed the Petition and Motion to Stay;

WHEREAS, on September 16, 2019, Terry filed Defendant Terry Begeman's Consolidated Reply Brief to Plaintiff Rainbow Mountain's Aug. 30, 2019 Opposition (the "Reply");

WHEREAS, on October 15, 2019, the Court heard argument on the Motions;

NOW, THEREFORE, THE COURT HEREBY FINDS AND ORDERS AS FOLLOWS:

1. Jordan of Jordan Law, LLC originally represented RMI in this action. On January 14, 2019, Jordan filed a Motion to Withdraw because allegations in Terry's Answer and Counterclaim implicated Jordan as a fact witness. On January 30, 2019, Terry filed the Opposition. The Opposition did not oppose Jordan's Motion to Withdraw, but it requested that the Court enter default judgment against RMI and sixteen of the eighteen Third-Party Defendants for failure to respond to Terry's Counterclaim within twenty days of service. Terry argued that the Motion

3

to Withdraw did not demonstrate good cause for the failure to respond to the Counterclaim.

2. On February 8, 2019, I ordered Jordan to certify that he sent the Motion to Withdraw, the February 8 Order, and the Opposition to RMI by first class mail return receipt requested. I informed Jordan that upon compliance with these requirements he could file a revised Stipulation and [Proposed] Order Regarding Substitution of Counsel that simply grants the Motion to Withdraw. I further informed the parties that "[i]f no objection to that proposed order is filed within ten (10) days after its submission, the Court will grant the proposed order." Finally, I informed RMI that if substitute counsel did not appear within thirty days of the entrance of the proposed order granting Jordan's withdraw, I would entertain a motion for default judgment against RMI.

3. After the entry of the February 8 Order, Jeffrey Begeman, acting as president of RMI, retained Potter Anderson. On March 8, 2019, Seth R. Tangman and David M. Hahn of Potter Anderson entered their appearances. On May 1, 2019, Jordan filed a certification and the proposed order granting withdrawal as required under the February 8 Order. The following day, I granted the proposed order.[2]

---

[2] At the hearing, Terry confirmed he does not challenge Jordan's withdrawal. Instead, he challenges Potter Anderson's appearance. Additionally, Terry wants the Court to consider the merits of his Motion for Default Judgment for failure to respond to the Counterclaim, which I have done in a separate order dated December 5, 2019.

4. Terry argues that Jeffrey's retention of Potter Anderson was improper because, under Delaware's "board-centric approach," RMI's president cannot act alone in retaining counsel; rather, Terry contends that a majority of RMI's board of directors (the "Board") must approve the retention of counsel. Def.'s Reply Br. 7-9. Thus, because the Board did not approve the retention of Potter Anderson, Potter Anderson cannot validly represent RMI. Def.'s Reply Br. 9-14. Terry concludes that because RMI failed to retain Board-approved counsel within the thirty days allocated under the February 8 Order, RMI is unrepresented and failed to comply with the February 8 Order; thus, the Court should enter default judgment against RMI. *See, e.g.*, Def.'s Reply Br. 21-22. In the alternative, Terry requests that the Court stay RMI's complaint until the Court determines the proper constitution of RMI's Board, as requested in the Counterclaim.

5. Article VI of RMI's 2003 bylaws states, in part, that the president shall: "have the power to sign contracts, powers of attorney… and other instruments on behalf of [RMI]" and "operate and conduct the business and affairs of [RMI] according to the orders and resolutions of the [Board], and according to his or her own discretion whenever and wherever it is not expressly limited by such orders and resolutions or by law." Compl. Ex. A, at 12.

6. Under the plain language of RMI's bylaws, the sitting president has the ability to retain counsel so long as the Board has not passed a resolution stating

5

otherwise. It is undisputed that Jeffrey is the president of RMI and that the Board has passed no resolution prohibiting the president from appointing counsel for RMI.

7. Terry points to nothing in the Delaware General Corporation Law that prohibits an officer from retaining counsel without board approval. Instead, Terry quotes *Italo-Petroleum Corp. of America v. Hannigan*, which states that a corporation's president "is presumed to have, by virtue of his office, certain more or less limited powers in the transaction of the usual and ordinary business of the corporation." 14 A.2d 401, 406 (Del. 1940); Def.'s Reply Br. 10. Terry concludes, "[t]his usual and ordinary business expression reveals two features of interest: the incidental authority is 1) presumptive, and 2) limited." Def.'s Reply Br. 10 -11. "[Jeffrey] as 'president' of RMI, then, is limited to the general scope and operation value, subject to the [Board], who, under charter, are to manage the activities and 'affairs' of the Corporation." *Id.* at 10.

8. It is unclear to me how *Italo-Petroleum Corp.* would prohibit the conduct at issue here. *Italo-Petroleum Corp.* does not address a bylaw, like the one at issue here, that authorizes the president to conduct the business and affairs of the corporation "according to his or her own discretion whenever and wherever it is not expressly limited by [orders and resolutions of the Board]." Compl. Ex. A, at 12. Regardless, even if Jeffrey's implied authority as president is limited to the usual

6

and ordinary business of RMI, Terry has pointed to nothing to suggest that the retention of counsel was unusual or extraordinary.

9. Terry also quotes former Chief Justice Strine's decision in *OptimisCorp v. Waite*, which states that ". . . it has long been the policy of our law to value the collaboration that comes when the entire board deliberates on corporate action and when all directors are fairly accorded material information." 137 A.3d 970, 2016 WL 2585871, at *3 (Del. 2016) (TABLE); Def.'s Reply Br. 12-13. Terry appears to cite *OptimisCorp* as support for the notion that Delaware favors board collaboration over singular officer decision-making. *OptimisCorp*, however, relates to "whether all directors are entitled to fair and non-misleading notice of the agenda for a special meeting," not whether the board of directors rather than an officer must retain counsel for a company. 137 A.3d 970, 2016 WL 2585871, at *2. Therefore, *OptimisCorp* is not relevant to this analysis.

10. Because RMI's bylaws grant the president the ability to sign contracts and conduct the business and affairs according to his own discretion, Jeffrey's retention of Potter Anderson was proper and approval of a majority of the Board is not required. The Motion to Disqualify is DENIED.

11. On July 23, 2019, Terry moved for entry of a default judgment against RMI for failing to properly retain Board approved counsel within the period allotted in the February 8 Order. Under the February 8 Order, counsel for RMI had to enter

7

its appearance within thirty days of the order granting Jordan's Motion to Withdraw. Potter Anderson entered its appearance on March 8, 2019, before Jordan filed the proposed order granting his withdrawal on May 1, 2019. As discussed above, RMI's president properly retained Potter Anderson on behalf of RMI. RMI complied with the February 8 Order in full. As such, this Motion for Default Judgment is DENIED.

12. Recognizing that Delaware counsel must represent RMI in this litigation, Terry filed a Motion to Stay RMI's Complaint until the Court determines RMI's Board, and that Board approves retention of counsel. As discussed above, RMI properly retained Potter Anderson, a Delaware law firm. Therefore, Terry's Motion to Stay is DENIED.

*/s/ Tamika Montgomery-Reeves*
Vice Chancellor
Dated: December 5, 2019

8